OPINION OF THE COURT
Allan Dixon, J.
This matter comes before the court on a petition filed pursuant to section 384 of the Social Services Law by John R. Beaudoin, Commissioner of Social Services of the County of Rensselaer, on July 5, 1979. The relief requested in that petition is the approval of an instrument executed by Maglon Rouzer Lewis on January 6, 1978, in which she permanently surrendered the guardianship and custody of her child, Manuel Cilvester Danielson, to the petitioner for the purpose of placing said child for adoption. Subdivision 4 of section 384 of the Social Services Law clearly mandates that judicial approval of such a surrender instrument is not required to validate the same. It is equally clear, therefore, that the reason the Department of Social Services initiated this proceeding is that Ms. Lewis notified the agency of her intention to revoke the surrender on February 8, 1978. The child is currently in the foster care of Georgia Gordon and has been since on or about March 15, 1976. Mrs. Gordon has a statutory preference for adoption and has indicated that she intends to adopt the child as soon as she is legally permitted to do so.
There are two avenues upon which Ms. Lewis can seek to have the court annul the surrender instrument. Clearly, she may allege that execution or inducement of the surrender was based upon fraud, duress, or coercion. As will be fully discussed later, Ms. Lewis does so allege. The other avenue, as does the first one described above, finds its roots in subdivision 5 of section 384 of the Social Services Law. That section provides that a surrendering parent may not maintain an action or proceeding to annul or revoke a surrender where 30 days have elapsed since the execution thereof and where the child has been placed in the home of adoptive parents, meaning, for the purposes of that section, that the fact of such placement for adoption, the date thereof, the date of the agreement pertaining to the adoptive placement and the names and addresses of the adoptive parents have been recorded in a bound volume designated for such purpose by the appropriate authorized agency. Thus, if 30 days have not elapsed since the execution of the agreement, or if the child has not been "placed in the home of adoptive parents” within *35 the meaning of the statute, the surrendering parent may seek to have the surrender annulled. At that point, if the parent is fit and the return of the child to the parent would be in the child’s best interests, the court may direct the return of the child despite the existence of the surrender. (People ex rel. Anonymous v Saratoga County Dept. of Public Welfare, 30 AD2d 756; Matter of Geiger, 6 AD2d 977; Matter of "Baby Boy P”, 85 Misc 2d 1001; Practice Commentary, 1979-1980 Pocket Part, McKinney’s Cons Laws of NY, Book 52A, Social Services Law, § 384, pp 182-183.)
As previously stated, it appears from the record that Mrs. Lewis’ major contention is that the surrender should be annulled by the court on the ground that there was fraud, duress, and coercion in the inducement of the surrender. After hearing all of the testimony, the court is satisfied that there was no fraud, duress, or coercion on the part of the petitioner or any of his agents in the inducement or execution of this surrender. Indeed, the record indicates that the caseworker took special pains to make sure that Mrs. Lewis knew what she was signing and understood the consequences of her acts. It is equally clear, however, that Mrs. Lewis did not sign the surrender freely and voluntarily and without outside influence. The record clearly indicates that Donald Lewis, Mrs. Lewis’ husband at the time of the execution of the surrender, was instrumental in persuading Mrs. Lewis to sign the surrender. The court is satisfied that Mr. Lewis made it clear to his wife that he would leave her unless she permanently surrendered this child for adoption. In effect, Mrs. Lewis was forced to choose between her husband and her child. Under such circumstances the surrender can hardly be said to have been obtained without duress or coercion. Additionally, there may even be an element of fraud involved herein as the record indicates that Donald Lewis left his wife, despite his promise to remain, shortly after she had signed the surrender. There is nothing in section 384 of the Social Services Law which indicates that the fraud, duress or coercion must be on the part of the Department of Social Services.
Having found that Mrs. Lewis signed the surrender as a result of fraud, duress, and coercion in the inducement thereof, the court must now determine the effect of this finding. The issue appears to be whether, having found that the surrender was not freely and voluntarily executed, must the court necessarily annul the surrender or should further *36 inquiry be made into the best interests of the child. This would appear to depend upon two things, i.e., the nature of the fraud, duress, or coercion, as the case may be, and the motive for the surrendering parent’s acquiescence therein.
To use an extreme example, without in any way referring to the instant case, suppose that a potential adoptive parent held a loaded revolver to the head of the child’s natural parent to "induce” that parent to sign a permanent surrender. In that case, the nature of the duress and coercion is clear, i.e., the threat of imminent deadly force, as is the motive for the acquiescence therein, i.e., the desire not to be killed. These matters would be totally unrelated to the child in question and would have no bearing on the best interests of the child. In such a case, the court would have no difficulty in annulling the surrender without further inquiry into the best interests of the child. However, in the instant case, the nature of the fraud, duress and coercion and the motive for Mrs. Lewis’ acquiescence therein has a direct bearing on the best interests of the child and therefore, further inquiry must be had into the child’s best interests. More specifically, Mrs. Lewis agreed to sign a permanent surrender of her child for adoption based upon her husband’s promise to her that he would remain with her if she surrendered the child and would leave her if she did not. The motive for her acquiescence in this fraud and duress was, of course, her love for her husband. The crucial factor here, of course, is that faced with the choice between her husband and her child, Mrs. Lewis chose her husband. Mrs. Lewis’ present desire to have the child returned to her was obviously triggered by her husband’s deserting her despite his promise to remain.
The court is of the opinion that with that important factor established, there is sufficient proof in the record to make a determination as to the best interests of the child. Since March, 1976, when Manuel was initially placed in foster care by his mother, he has resided in the foster home of Georgia Gordon. The court held a lengthy in camera interview with the child and his Law Guardian and was impressed by the depth of his love and regard for his foster mother. Manuel is nearly 12 years old and has resided with Mrs. Gordon for over four years. Under these circumstances, his clear preference to remain with Mrs. Gordon should be given substantial weight. Mrs. Gordon impressed the court as a kind and loving foster parent who genuinely desires to have Manuel become her own *37 child. The record indicates only sporadic visitation by Mrs. Lewis and further that Manuel has no interest in seeing his mother. The court is satisfied that Mrs. Lewis’ current desire to have Manuel returned to her is due to an "attack of conscience” which resulted after her husband, for whom she was willing to give up her child, deserted her. Under these circumstances the court finds that it would be in the best interests of the child for him to remain with his foster mother.
Based upon all of the foregoing, it is the decision of this court that the petition of John R. Beaudoin, as Commissioner of Social Services of the County of Rensselaer, dated and verified July 5, 1979 requesting the approval of the permanent surrender of the child, Manuel Cilvester Danielson, executed by his mother, Maglon Lewis, on January 6, 1978, be and hereby is granted in all respects. The custody and guardianship of said child is committed to the petitioner and said child shall be placed by the petitioner for adoption in the foster home of Georgia Gordon. Counsel for the petitioner shall submit an order in accordance with the terms of this decision.